(No. 75-CC-1174— )

MIDWEST TRUCK SALES AND AUTO DISPOSAL and JAMES SMITH, Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed August 3, 1979.*

MAURICE W. KEPNER, for Claimant.

WILLIAM J. SCOTT, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondent.

POCH, J.

Claimants filed a claim for $13,476.50 for rent alleged to be due for the storage of nine vehicles, from February 4, 1972 to December 19, 1974.

1. On February 4, 1972, a representative of the Investigative Unit, Motor Vehicle Division, Secretary of State of Illinois, petitioned for and was granted a search warrant by the Circuit Court of Sangamon County. Pursuant to said warrant the Secretary of State investigators on February 4, 1972, seized certain motor vehicle cabs and beds from the premises of Neville's Auto Parts in Sangamon County, Illinois, and arrested Clarence Neville.

2. On February 4, 1972, said Secretary of State investigators took said items to the place of business of the Claimant, James Smith, at 2715 South 11th Street, Springfield, Illinois, known as Jim's Towing Service. Said investigators advised James Smith that they had seized these items under a search warrant, that they were to be held as evidence, and requested him to provide inside storage for same.

3. In May 1973, Jim's Towing Service went out of business, but James Smith continued to rent the building wherein the aforesaid items were stored until November 1973, when he had to give up the building. In November 1973, at James Smith's request, Midwest Truck Sales and Auto Disposal took over the storage of said items and gave them inside storage at its place of business, 420 South 31st Street, Springfield, Illinois, without informing any of the parties.

4. In the summer of 1974, the Secretary of State investigators requested that Midwest get together a complete storage bill because the State's Attorney wanted it, in connection with the criminal case against Neville. Midwest prepared such a bill at $15.00 per day and gave same to said investigators.

5. Within a few days after Clarence Neville was sentenced on September 16, 1974, Delbert Wake, owner of Midwest Truck Sales, advised the Secretary of State investigators that he needed the space where these items were stored and requested that they remove said items and also inquired about payment of the storage bill. He was advised that they would check into the matter and let him know, but he heard nothing from them.

6. Later in September and in October 1974, Claimants, through their attorney, contacted the office of the Secretary of State requesting that the items be removed and that arrangements be made for payment of the storage bill.

7. On November 15, 1974, the Claimants filed a petition in the Circuit Court of Sangamon County for disposition of these items being held by them in storage under the search warrant. The Claimants asked that the Secretary of State, State of Illinois, and the County of Sangamon be made additional parties and gave notice of the hearing on the petition to them as well as to a group of persons claiming some interest in the motor vehicles.

8. On December 6, 1974, the Circuit Court of Sangamon County entered an order on the petition releasing the property from the search warrant, declaring that the Claimants had a storage lien on said items in the amount of $15.00 per day from February 4, 1972, to the date of sale, and ordering the property sold at public sale to satisfy said lien.

9. Pursuant to said order said items were advertised and sold on December 19, 1974, at public sale for $2,275.00. After deducting $16.50 publication costs the balance of $2,258.50 was paid to the Claimants in partial satisfaction of their lien. On January 3, 1975, the Circuit Court of Sangamon County entered an order confirming the sale and decreeing the amount of the deficiency of the Claimants to be $13,476.50.

The issue here is whether the Secretary of State, through one of its employees, entered into a contract for storage with Jim's Towing Service and Midwest Truck Sales and Auto Disposal.

In taking the claim of Jim's Towing Service, the applicable law is that in dealing with an agent one must ascertain at his peril, the authority of the agent. The mere assertion by an agent of his powers is not sufficient to bind the principal.

Here, the State's employee, Mr. Tuttle, had no authority to incur an obligation for the State. Therefore, before accepting the vehicles, the Claimant, James Smith, should have contacted Mr. Tuttle's superiors to determine the extent of the employee's authority.

Claimants further contend that even if Mr. Tuttle was not originally authorized to enter into a contractual obligation, he subsequently became authorized when the Secretary of State's office gave him the name of Jim's Towing Service and was aware that the vehicles were there.

According to the testimony, the vehicles were stored according to an order from the State's Attorney's Office of Sangamon County. Mr. Tuttle called his office to obtain a name of a storage garage, so as to be able to comply with the State's Attorney's order. Nothing in these facts indicates that the Secretary of State's office

authorized Mr. Tuttle to enter into a contract. The Secretary of State's office was merely providing information to its employee so that he could comply with the order of the State's Attorney.

As to the claim of Midwest Truck Sales and Auto Disposal, there was never any contact between the parties as to storing the vehicles there. The Claimants on their own transferred them to Midwest without the approval of any of the parties concerned. Since there was no knowledge, there could not be a contractual arrangement. Therefore, the claim of Midwest Truck Sales and Auto Disposal should be denied.

It is therefore ordered that the claims of the Claimants be and are hereby denied.